## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MERRIER A. JACKSON TARTT,

     *Plaintiff,*

  v.                           Case No. 23-02146-EFM

UNIFIED SCHOOL DISTRICT NO. 475,

     *Defendant.*

## MEMORANDUM AND ORDER

Before the Court is Defendant Unified School District No. 475's ("USD 475") Motion for Summary Judgment (Doc. 41). Defendant asks this Court to grant summary judgment against Plaintiff's claims of racial discrimination and retaliation under 42 U.S.C. § 1981 and racial discrimination and retaliation claims under Title VII of the Civil Rights Act. Plaintiff opposes the motion for summary judgment. Because Plaintiff fails to demonstrate pretext on either claim, the Court grants Defendant's Motion.

## I.      Factual and Procedural Background[1]

This case arises out of Defendant's non-renewal of Plaintiff's contract as a school principal. Plaintiff is an African American woman and has worked as a principal in several different schools. Dr. Reginald Eggleston, an African American man, has been the Superintendent of USD 475 since 2019. Eggleston recommended that Plaintiff apply for a position in the district. In the Fall of 2020, Plaintiff was hired by Defendant. Plaintiff served as the interim principal at Junction City High School ("JCHS") for the remainder of the 2020–2021 school year.[2] In the spring of 2021, she applied and was hired as the JCHS principal for the 2021–2022 school year. Because Plaintiff worked with assistant principals, building relationships and creating a team atmosphere was necessary for success.

Ron Johnson was elected to the school board in 2019. In November 2021, Plaintiff expressed concerns to the Associate Superintendent, Debra Gustafson, that Johnson was "over monitoring" her and asked if she had done anything wrong. Gustafson told Plaintiff that she had not done anything wrong and that "Ron Johnson is a racist and he's going after the only two black administrators we have in the district." On another occasion, Gustafson texted another employee that Johnson "was out to get" Plaintiff, and the employee responded that Johnson was racist.

Plaintiff was put on an administrative improvement plan in the spring of 2022. On January 27, 2022, Gustafson met with Plaintiff. At the meeting, Gustafson told Plaintiff that some people had expressed that they felt uncomfortable with her during various interactions. For example, an

---

[1] The facts are those uncontroverted by parties unless otherwise noted.

[2] Plaintiff attempts to controvert this fact; however, Plaintiff agrees that she served as the interim principal for the remainder of the 2020–2021 school year. The parties also stipulated to this fact, as noted in the Pretrial Order (Doc. 36).

assistant principal decided to begin applying for other jobs due to the stress of working for Plaintiff, another assistant principal told school board members that she left the district because of Plaintiff, and another assistant principal had begun applying for positions outside of the district because of Plaintiff. Gustafson went on to say that Plaintiff was perceived as intimidating because she would not "lower her gaze" when communicating with others.

On January 30, 2022, Plaintiff sent a memorandum to Gustafson and sent a copy to Eggleston. The memorandum complained that Gustafson's comments in the January 27th meeting were "microaggressive" and "racist and inappropriate."

On February 4, 2022, Plaintiff was informed that she would not be submitted for early contract renewal.

Plaintiff and Eggleston had a meeting on February 7, 2022, during which Plaintiff told Eggleston about her conversation with Gustafson. She used the word "demeaning" to describe the conversation but then stated, "it was not demeaning, I want to make that clear." Plaintiff further stated, "I think it was inappropriate, and I think, I know it had racial connotation to it. Now whether or not she intended it to be that way, that's why it's called microaggression." Eggleston responded that he believed Plaintiff's concerns were legitimate and he wanted the three of them to meet to maintain a healthy working relationship.

Eggleston, Gustafson, and Plaintiff met on February 9, 2022. Gustafson explained what she meant to convey in their original meeting and acknowledged doing a poor job of relaying the communication complaints.

On February 11, 2022, Ruth Godbout, the 2021–2022 Director of Secondary Education, emailed Eggleston with concerns about completing the master schedule. Plaintiff was asked by

Godbout to send a copy of the master schedule to the administrative team on February 21, 2024.[3] After receiving the copy of the master schedule, administration discussed with Plaintiff their concerns about getting the master schedule pulled together collaboratively and on time.[4]

A math teacher emailed administration on February 24, 2022. The teacher expressed his opinion that Plaintiff "disregards our input and feigns listening to our concerns."

Eggleston met with Plaintiff in early March. At the meeting, Eggleston recommended that Plaintiff resign. After spring break, in March, Plaintiff was placed on administrative leave.

On April 19, 2022, a final KEEP Evaluation[5] was submitted for Plaintiff. She received the following marks in the evaluation constructs section: highly effective in the section of Student Performance Rating; highly effective in the section of Academics; developing in the section of Setting Direction; developing in the section of Developing All Students; ineffective in the section of Developing staff; and ineffective in the section of Making the Organization Work.

The school board met on May 3, 2022, and voted not to renew Plaintiff's employment contract. This decision was unanimous.

On March 31, 2023, Plaintiff brought claims of racial discrimination and retaliation under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act against Defendant. Defendant moved for summary judgment on February 23, 2024. Plaintiff filed her Response on March 19, 2024. On April 11, 2024, Defendant filed its Reply.

---

[3] Plaintiff attempts to controvert this fact by stating where the master schedule was maintained and who had access to it, but this fails to create a genuine dispute as to whether Plaintiff was asked to send a copy of it.

[4] Plaintiff attempts to controvert this fact by stating where the master schedule was maintained and who had access to it, but this fails to create a genuine dispute as to whether administration discussed their concerns with Plaintiff.

[5] The KEEP process was the standard evaluation process used by USD 475.

## II.    Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[6] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[7] The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[8] The nonmovant must then bring forth specific facts showing a genuine issue for trial.[9] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits— conclusory allegations alone cannot survive a motion for summary judgment.[10] The court views all evidence and reasonable inferences in the light most favorable to the non-moving party.[11]

## III.    Analysis

Defendant asks this Court to grant it summary judgment on Plaintiff's racial discrimination and retaliation claims. Plaintiff brings each claim under both 42 U.S.C. § 1981 and Title VII of the Civil Rights Act. However, the elements of the § 1981 and Title VII claims are identical,[12] and the facts undergirding all of Plaintiff's claims are the same. Thus, the Court will only perform one racial discrimination analysis and one retaliation analysis.

---

[6] Fed. R. Civ. P. 56(a).

[7] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006) (citing *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1224 (10th Cir. 2001)).

[8] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[9] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (citation omitted).

[10] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998)).

[11] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (citation omitted).

[12] *Muniz v. Highman*, 16 Fed. App'x 988, 992 (10th Cir. 2001) ("These elements are identical for § 1981 and Title VII actions.").

## A.      Race Discrimination

Defendant argues that it is entitled to summary judgment on Plaintiff's racial discrimination claims under § 1981 and Title VII because it did not discriminate against Plaintiff because of her race. "In racial discrimination suits, the elements of a plaintiff's case are the same whether that case is brought under § 1981 . . . or Title VII."[13] A plaintiff may prove a violation of Title VII or § 1981 either by direct evidence of discrimination, or by adhering to the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[14]

"Direct evidence of discriminatory animus is rare. If believed, direct evidence proves the existence of a fact in issue without inference or presumption, such as an employer's facially discriminatory policy or an oral or written statement showing a discriminatory motive."[15] "[I]n the employment context, this type of evidence is usually impossible to obtain."[16] "Generally, '[c]omments in the workplace that reflect personal bias do not qualify as direct evidence of discrimination unless the plaintiff shows the speaker had decision[-]making authority and acted on his or her discriminatory beliefs.'"[17]

Here, Plaintiff asserts that Gustafson's comments about Johnson—i.e. that Johnson was "going after her" because of her race is direct evidence of discrimination. Additionally, Plaintiff cites Gustafson's own microaggressive comments as evidence of direct discrimination. However, Plaintiff fails to provide evidence that either Johnson or Gustafson acted on their discriminatory

---

[13] *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008) (further citations omitted).

[14] *Xu v. Denver Pub. Sch.*, 2024 U.S. App. LEXIS 2644, at *8 (10th Cir. Feb. 6, 2024).

[15] *Herrmann v. Salt Lake City Corp.*, 21 F.4th 666, 678 (10th Cir. 2021) (cleaned up).

[16] *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1213 (10th Cir. 2022) (quotation omitted).

[17] *Id*. (quoting *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013).

beliefs. This does not meet the high burden of direct evidence. As such, the Court will evaluate whether Plaintiff's racial discrimination claims may proceed under the *McDonnell Douglas* framework.

The *McDonnell Douglas* framework has three parts. First, the plaintiff must establish a prima facie case by a preponderance of the evidence.[18] Second, if the plaintiff makes out a prima facie case, the burden shifts to the employer to assert a legitimate nondiscriminatory reason for its actions.[19] Third, if the employer does so, the burden shifts back to the plaintiff to introduce evidence that the stated nondiscriminatory reason is merely a pretext.[20]

### 1. *Plaintiff's Prima Facie Case*

The Court first considers whether Plaintiff has identified evidence sufficient to support a prima facie case of race discrimination based on unlawful discharge.[21] To do so, a plaintiff must demonstrate that (1) she was a member of a protected class; (2) she was qualified and satisfactorily performing her job; (3) she was terminated; and (4) her termination occurred under circumstances giving rise to an inference of discrimination.[22] Both parties agree that Plaintiff, as an African American female, is a member of a protected class. Likewise, both parties agree that Defendant terminated Plaintiff's employment as a principal. Thus, Defendant's motion contests Plaintiff's ability to satisfy the second and fourth elements of her prima facie case.

---

[18] *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1191 (10th Cir. 2000).

[19] *Mann v. XPO Logistics Freight, Inc.*, 819 F. App'x 585, 595 (10th Cir. 2020).

[20] *Id.*

[21] *See Awuliff v. Unified Sch. Dist. #261*, 2006 WL 8441633, at *23–24 (D. Kan. Apr. 5, 2006) (treating a non-renewal of a contract as a termination of employment).

[22] *White v. Certainteed Corp.*, 2019 U.S. Dist. LEXIS 80077, at *41 (D. Kan. May 13, 2019) (quoting *Barlow v. C.R. Eng., Inc.*, 703 F.3d 497, 505 (10th Cir. 2012)).

      a.     Plaintiff was qualified for her position and satisfactorily performing her job.

Under the second element, Plaintiff must demonstrate that she was qualified for her position and satisfactorily performing her job. This burden is "not onerous."[23] In fact, the Tenth Circuit has held that a plaintiff may "demonstrate her satisfactory performance simply by insisting that [he] was performing satisfactorily."[24] Here, Plaintiff asserts she was performing satisfactorily. It is uncontroverted that she received two highly effective ratings, two developing ratings, and two ineffective ratings on her KEEP evaluation. Thus, the Court finds that Plaintiff's work was satisfactory under the second elements low burden.

Moreover, Plaintiff was qualified. "The relevant inquiry at the prima facie stage is not whether an employee . . . is able to meet all the objective criteria adopted by the employer, but whether the employee has introduced some evidence that she possesses the objective qualifications *necessary to perform the job sought*."[25] Plaintiff has presented evidence demonstrating that she had experience working as a principal in several different schools. Therefore, the Court concludes that Plaintiff has presented enough evidence to meet the low threshold for establishing the second element of her prima facie case.

      b.     Plaintiff raises an inference of race discrimination.

Under the last element, Plaintiff must demonstrate that she was terminated under circumstances giving rise to an inference of discrimination. This element only requires the plaintiff "to raise an inference of discrimination, not dispel the non-discriminatory reasons subsequently

---

[23] *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005) (quoting *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)).

[24] *Brainerd v. Schlumberger Tech. Corp.*, 589 F. App'x 406, 410 (10th Cir. 2015).

[25] *Horizon*, 220 F.3d at 1193 (emphasis in original).

proffered by the defendant."[26] An inference of discriminatory motive can be shown by variety of circumstances, including: (1) "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus;" (2) "preferential treatment given to employees outside the protected class;" (3) "a pattern of recommending the plaintiff for positions for which she is not qualified;" or (4) "the timing or sequence of events leading to plaintiff's termination."[27] However, a plaintiff's subjective belief that the defendants were conspiring against her is insufficient to create a genuine issue of material fact.[28]

Here, Plaintiff cites various instances that she believes gives rise to an inference of race discrimination. First, Plaintiff claims that her KEEP evaluation failed to conform with Kansas law.[29] Next, she relies upon a text message exchange between Gustafson and another employee that Johnson was "out to get Plaintiff." She also cites Gustafson's warning to her that Johnson was a racist and that he was going after African American administrators in the District. Plaintiff further claims that Gustafson's remarks about Plaintiff's demeanor and eye contact constituted microaggressions.

The evaluations' failure to conform with Kansas law is not evidence of discrimination. Although evaluations of the principals were only conducted once a year instead of the required two times a year, all principals were only evaluated once a year. Thus, Plaintiff was evaluated the

---

[26] *Laul v. Los Alamos Nat'l Labs.*, 714 F. App'x 832, 836 (10th Cir. 2017).

[27] *Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005).

[28] *Lewis v. Std. Motor Prods.*, 203 F. Supp. 2d 1228, 1234 (D. Kan. 2002).

[29] Plaintiff also asserts that the listening session was used as an ex post facto attempt to cover up for the failure to conduct her required evaluation twice a year. A listening session was held by Eggleston to solicit feedback on how the school year was going. The listening session was conducted in a large group setting. Plaintiff only received one individual evaluation instead of two. Additionally, she claims that the former HR director's opinion that racial animus was involved in the decision to terminate Plaintiff is evidence of an inference of race discrimination. However, these arguments are based on inadmissible evidence. Thus, the Court will not address them.

same number of times as the rest of the principals. Because all principals were treated equally in this regard, this does not support an inference of race discrimination.

However, a reasonable fact finder could determine there was an inference of race discrimination from the repeated statements and warnings about Johnson and the statements from Gustafson. As a result, the Court finds that Plaintiff establishes a prima facie case. The Court now turns to assess whether Defendant has asserted a legitimate nondiscriminatory reason for its actions.

### 2.    *Defendant's Legitimate Nondiscriminatory Reason*

Under the second stage of the *McDonnell Douglas* framework, Defendant must articulate a legitimate nondiscriminatory reason for Plaintiff's termination. This "exceedingly light" requirement only requires a defendant to "provide admissible evidence of a legally sufficient explanation for the employment action."[30]

Here, Defendant has articulated that Plaintiff was terminated for her failure to establish positive relationships with her fellow administrators, teachers, and staff; her creation of a tensile and negative workplace atmosphere; and her abusive supervision techniques. These are legitimate nondiscriminatory reasons to terminate Plaintiff's employment.[31] Thus, the burden now shifts back to Plaintiff to show pretext.

---

[30] *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017) (citation omitted).

[31] *See Morales v. McKesson Health Solutions*, LLC, 136 Fed. App'x 115, 118 (10th Cir. 2005) (finding that disruptions of workplace harmony were valid nondiscriminatory reasons for terminating employment); *Stewart v. HP Distribution LLP*, 2007 WL 4463566, at *3 (D. Kan. Dec. 17, 2007) (holding that terminating an employee because of fellow employees' repeated complaints constituted a legitimate nondiscriminatory reason).

### 3.      *Plaintiff's Burden to Show Pretext*

Under the McDonnell Douglas framework, a plaintiff may show pretext by identifying "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in a defendant's proffered reasons for termination such "that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."[32] In assessing an employer's reason, the court must assess the facts from the employer's perspective—not the aggrieved employee's.[33] Accordingly, "[t]he relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs."[34]

Plaintiff argues that a reasonable jury could conclude that Defendant's reasons for termination her employment were pretextual. To support her claim Plaintiff argues that she was improperly blamed for Defendant's disorganization and time management issues. As evidence, she states in her affidavit that the school district was in disarray when she began her job. Additionally, Plaintiff suggests that the failure to complete the master schedule in time was not due to her own failures but was a direct result of the inaction by the assistant principals.

Plaintiff further suggests that the board knew it would not renew her contract before it ever voted because the school board advertised for a new principal before completing Plaintiff's KEEP evaluation. She also points to Johnson's inability to recall the specifics of the vote to not renew the contract.[35]

---

[32] *Lobato, N.M. Env't Dept.*, 733 F.3d 1283, 1289 (10th Cir. 2013) (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)).

[33] *Id*. (citing *Luster v. Vilsack*, 667 F.3d 1089, 1093 (10th Cir. 2011)).

[34] *Id*. (citing *Luster*, 667 F.3d at 1094).

[35] Plaintiff also cites Dawn Toomey's, Human Resources Director of USD 475, statement that racial animus was involved in the decision to terminate Plaintiff. However, Toomey was the HR Director until June 30, 2021, and

These arguments, however, fail to establish that Plaintiff was terminated because of her race. Rather, Plaintiff seems to complain that Defendant's decision to not renew her contract was not "wise, fair, or correct." The only argument relating to race is Plaintiff's assertion that she was viewed as an angry black woman. However, Plaintiff only relies on affidavits of two school district employees where they opine that they did not view her as an angry black woman. Plaintiff does not provide evidence that anyone ever called her an angry black woman or that such characterization undergirded the reason for her termination.

Further, Plaintiff's sole argument regarding the termination decision does not address any racial animus. Instead, Plaintiff relies on Johnson's inability to recall the specifics of the unanimous vote to terminate. This does not constitute the "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" that *McDonnell Douglas* requires to undercut the board's overall decision. Plaintiff does not provide evidence showing that race was a criteria or motivating factor in the vote to not renew her contract. As such, the Court does not consider this evidence to rise to a level of pretext. As a result, the Court grants Defendant's Motion as to the race discrimination claims under § 1981 and Title VII.

## B. Retaliation Claims

Next, Defendant argues that it is entitled to summary judgment on Plaintiff's retaliation claims under § 1981 and Title VII because there is no causal connection between the adverse employment action and the protected activity. Claims for retaliatory discharge under § 1981 and

---

Plaintiff was terminated on May 3, 2022. Thus, Toomey's statement is not based on personal knowledge, and it is inadmissible. As such, the Court will not consider or address this argument in its analysis.

Title VII are analyzed under the same *McDonnell Douglas* burden shifting framework.[36] Thus, Plaintiff must first demonstrate a prima facie case of retaliation.[37]

### 1. Plaintiff's Prima Facie Case

The Court first considers whether Plaintiff has identified evidence sufficient to support a prima facie case of retaliation. To do so, a plaintiff must establish that "(1) [s]he engaged in protected opposition to discrimination; (2) [s]he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action."[38] Defendant does not dispute that Plaintiff engaged in a protected activity by submitting her memorandum to Eggleston complaining of Gustafson's microaggressions, or that the non-renewal of Plaintiff's contract is an adverse employment action. Thus, Defendant's motion contests Plaintiff's ability to satisfy the third element of her prima facie case.

### a. Causal Connection

Under the third element, Plaintiff must demonstrate that there was a causal connection between the protected activity and the adverse employment action. Causal connection can be reasonably inferred by close temporal proximity.[39] On January 30, 2022, Plaintiff submitted a memorandum to Eggleston complaining of Gustafson's microaggressions. This constitutes a protected activity. Then, Plaintiff was advised on February 4, 2022, that her name would not be

---

[36] *Muniz*, 16 Fed. App'x at 992.

[37] *Id.*

[38] *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1252 (10th Cir. 2001).

[39] *See Conroy v. Vilsack*, 707 F.3d 1163, 1181 (10th Cir. 2013) (holding that although a clear line of demarcation has never been established, "[i]t appears clear that, if the adverse action occurs in a brief period up to one and a half months after the protected activity, temporal proximity alone will be sufficient to establish the requisite causal inference."); *see also Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (finding that temporal proximity of two months and one week is sufficient); *Agnew v. Achievement Servs. of Ne. Kan., Inc.*, 2013 WL 3895316, at *2 (D. Kan. July 29, 2013) (finding that temporal proximity of one month was enough to establish causal connection).

submitted for early contract renewal. Defendant began advertising for a new principal on April 25, 2022. On May 3, 2022, the school board officially voted on her non-renewal. Three months passed from the date of the protected conduct to the official nonrenewal, which by itself is not enough to establish causation by temporal proximity.[40] However, less than a week passed from the date of the protected conduct to the date Plaintiff was informed that she would not be submitted for early contract renewal. Plaintiff argues that this is evidence that Defendant intended to terminate her in retaliation for her complaints of Gustafson's microaggressions. Drawing all reasonable inferences in a light most favorable to Plaintiff, a reasonable fact finder could reasonably infer that a causal connection existed from the close temporal proximity. As a result, Plaintiff has established a prima facie case. The Court now turns to assess whether Defendant has asserted a legitimate nondiscriminatory reason for its actions.

### 2.   Defendant's Legitimate Nondiscriminatory Reason

Defendant's burden to establish a legitimate nondiscriminatory reason is not an onerous one.[41] Here, Defendant has articulated that Plaintiff was terminated for her failure to establish positive relationships with her fellow administrators, teachers, and staff; her creation of a tensile and negative workplace atmosphere; and her abusive supervision techniques. This is a legitimate nondiscriminatory reason behind the decision to terminate Plaintiff's employment.[42] Because Defendant satisfies its burden of production, the burden shifts back to Plaintiff to prove that Defendant's articulated reason for the adverse action is pretextual.

---

[40] *Conroy v. Vilsack*, 707 F.3d 1163, 1181–82 (10th Cir. 2013).

[41] *Allen v. Garden City Co-op, Inc.*, 651 F.Supp.2d 1249, 1260 (D. Kan. 2009).

[42] *See Morales*, 136 Fed. App'x at 118 (finding that disruptions of workplace harmony were valid nondiscriminatory reasons for terminating employment); *Stewart*, 2007 WL 4463566, at *3 (holding that terminating an employee because of fellow employees' repeated complaints constituted a legitimate nondiscriminatory reason).

     *3.     Plaintiff's Burden to Show Pretext*

To show pretext, Plaintiff must produce evidence showing that Defendant's proffered legitimate reasons for its action are unworthy of credence.[43] Here, Plaintiff ends her briefing with an analysis of the causal connection element. She fails to make a single pretextual argument rebutting Defendant's legitimate reasons for termination. Thus, Plaintiff wholly fails to provide any evidence or argument to show pretext. Consequently, Plaintiff fails to meet their burden. As a result, the Court grants Defendant's Motion as to the retaliation claims under § 1981 and Title VII.

**IT IS THEREFORE ORDERED** that Defendant Unified School District No. 475's Motion for Summary Judgment (Doc. 41) is **GRANTED**.

**IT IS SO ORDERED.**

Dated this 10th day of July, 2024.

This case is closed.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE

---

[43] *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1228 (10th Cir. 2008) (further citations and quotations omitted).