## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MERRIER A. JACKSON TARTT,

       *Plaintiff,*

v.                                     Case No. 23-2146-EFM

UNIFIED SCHOOL DISTRICT NO. 475,

       *Defendant.*

### MEMORANDUM AND ORDER

Before the Court is Defendant Unified School District No. 475's ("USD 475") Motion for Summary Judgment on Remand (Doc. 71). Previously, the Court granted Defendant summary judgment on Plaintiff Merrier A. Jackson Tartt's racial discrimination and retaliation claims under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act, which Plaintiff subsequently appealed. The Tenth Circuit largely affirmed the Court's rulings but reversed the Court's decision to disregard select portions of an affidavit provided by Plaintiff and remanded the case for further consideration of Plaintiff's Title VII discrimination claim.[1] On remand, Defendant argues it is still entitled to summary judgment on the Title VII discrimination claim—even considering the previously disregarded portions from the affidavit—because Plaintiff still cannot establish pretext. For the reasons stated below, the Court agrees and grants Defendant's Motion.

---

[1] *Tartt v. Unified Sch. Dist. No. 475*, 2025 WL 1779732, at *1 (10th Cir. June 27, 2025).

## I.    Factual and Procedural Background[2]

### A.    Factual Background

Plaintiff, an African American woman, first came to USD 475 at Superintendent Dr. Reginald Eggleston's invitation to apply for a position. In the Fall of 2020, Plaintiff was hired by Defendant and served as the interim principal at Junction City High School ("JCHS") for the remainder of the 2020–2021 school year. Plaintiff applied for and was hired as the JCHS principal for the 2021–2022 school year.

In November 2021, Plaintiff expressed concerns to Associate Superintendent Dr. Debra Gustafson that a USD 475 Board of Education ("Board") member, Ron Johnson, was "over-monitoring her." Gustafson told Plaintiff she had not done anything wrong and that "Ron Johnson is a racist and he's going after the only two black administrators we have in the district." The same month, Gustafson also texted her friend, Margie Pinaire, "[m]ake no mistake, Hudson and Hatcher (Johnson and Hayden) are after Dr. E and Ms. Jackson"—to which Pinaire responded, "racist."[3]

In late 2021 and early 2022, upper management at USD 475 fielded several complaints from employees about their ability to work with Plaintiff, leading to a meeting between Gustafson and Plaintiff. Eventually, the athletic director and three assistant principals who recently started during the 2021–2022 school year announced they were leaving their positions, in part, because of Plaintiff. On February 4, 2022, Eggleston submitted a list of administrators recommended for early

---

[2] The Court previously documented uncontroverted facts in this case in its Order granting Defendant's first motion for summary judgment. *See Tartt v. Unified Sch. Dist. No. 475*, 2024 WL 3362340, at *1–2 (D. Kan. July 10, 2024). Here, the facts are those uncontroverted and relevant to Plaintiff's Title VII discrimination claim on remand only, unless otherwise noted.

[3] "Hudson and Hatcher" refers to then-Board candidates, Beth Hudson and Mark Hatcher, while "Johnson and Hayden" refer to then-incumbent Board members, Ron Johnson and Kristy Haden. All four were members of the seven-member Board that unanimously voted to not renew Plaintiff's contract in 2022. "Dr. E' refers to Eggleston, and "Ms. Jackson" refers to Plaintiff, who is now Mrs. Tartt.

contract renewal, which did not include Plaintiff. Complaints about Plaintiff from staff continued. In early March 2022, Eggleston met with Plaintiff and recommended Plaintiff resign. Plaintiff was placed on administrative leave after spring break the same month.

On April 19, 2022, a KEEP evaluation[4] was submitted for Plaintiff, where she received a wide range of marks. Plaintiff received highly effective marks in the sections of Student Performance Rating and Academics but received ineffective marks in the sections of Developing staff and Making the Organization Work.

Plaintiff's evaluation was presented to the Board. In addition to Plaintiff's evaluation, members of the seven-member Board heard complaints about Plaintiff from staff and others. On May 3, 2022, the Board met and voted unanimously not to renew Plaintiff's contract for the following school year.  Each Board member reported various reasons for their decision, but Board members ultimately "conveyed to Eggleston that they had lost confidence in Tartt's ability to lead the building, maintain order in the building, work with staff, communicate and problem solve."[5]

Plaintiff filed this suit March 31, 2023, alleging racial discrimination and retaliation claims.

**B.    Defendant's First Motion for Summary Judgment and Motion to Strike**

At the conclusion of discovery, Defendant moved for summary judgment on Plaintiff's claims and moved to strike portions of three affidavits Plaintiff provided in response. Dawn Toomey provided one of Plaintiff's affidavits, whose employment for two years until June 30, 2021, as the Human Resources Director of USD 475 partially overlapped with Plaintiff's employment. The Court granted in part and denied in part Defendant's motion to strike,

---

[4] The KEEP process was the standard evaluation process used by USD 475.

[5] Plaintiff attempts to controvert this fact but only asserts that the reasons given are pretextual. This is a legal argument, not a contrary factual allegation.

disregarding from Toomey's affidavit sentences 6–8 of paragraph 11, paragraph 12, sentences 1–2 of paragraph 13, sentence 4 of paragraph 14, and paragraph 17 for noncompliance with Federal Rule of Civil Procedure 56(c)(4).[6]

The Court then addressed Defendant's motion for summary judgment under Rule 56(a).[7] The Court analyzed Plaintiff's discrimination claims under the three-part, burden-shifting framework of *McDonnell Douglas Corporation v. Green*.[8] The Court determined that Plaintiff successfully established a prima facie case of discrimination.[9] Defendant provided legitimate, nondiscriminatory reasons for terminating Plaintiff, including "her failure to establish positive relationships with her fellow administrators, teachers, and staff; her creation of a tensile and negative workplace atmosphere; and her abusive supervision techniques."[10] Plaintiff, however, failed to meet her burden to demonstrate pretext in Defendant's proffered reasons for terminating her.[11] Thus, the Court granted summary judgment on Plaintiff's discrimination claims.[12] Plaintiff subsequently appealed to the Tenth Circuit.

## C.    The Tenth Circuit's Ruling

The Tenth Circuit ruled narrowly on appeal, reversing only the Court's decision to disregard select portions of Ms. Toomey's affidavit and, accordingly, remanding the case for

---

[6] *Tartt v. Unified Sch. Dist. No. 475*, 2024 WL 3328576, at *4 (D. Kan. July 8, 2024).

[7] *Tartt*, 2024 WL 3362340, at *3–7.

[8] 411 U.S. 792 (1973).

[9] *Tartt*, 2024 WL 3362340, at *4–5.

[10] *Id.* at *5 (citation omitted).

[11] *Id.* at *6.

[12] *Id.*

further consideration of Plaintiff's Title VII discrimination claim.[13] Specifically, the Tenth Circuit directed this Court "to reassess the discrimination claim without disregarding any of paragraphs 11 and 12 of Ms. Toomey's affidavit."[14] The provisions the Court must consider on remand read:

> It is my understanding that Dr. Eggleston and Dr. Gustafson are stating that the[y] were not aware of the requirement of evaluations. I also understand they are now trying to say that no school administrators were being evaluated. This is not accurate.
>
> . . .
>
> If Mrs. Tarrt was not evaluated it was a conscious decision on the part of the administration. KSDE - KEEP maintains a record of all evaluations performed. They are set on a "cycle[."] The system sends reminders and I did as well. I would send out email reminders to the administrators (including Dr. Eggleston and Dr. Gustafson) advising them of their evaluations due out.[15]

The Tenth Circuit also instructed that this Court "should also consider specific allegations of racism by Board members other than Mr. Johnson, if any are made" when reassessing Plaintiff's discrimination claim.[16]

Pursuant to these instructions, the Court turns to Plaintiff's Title VII discrimination claim on remand.

## II.    Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[17] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered

---

[13] *Tartt*, 2025 WL 1779732, at *11.

[14] *Id.* at *8.

[15] *Id.* at *7–8; Doc. 46-6 at 4.

[16] *Tartt*, 2025 WL 1779732, at *8 n.17.

[17] Fed. R. Civ. P. 56(a).

evidence permits a reasonable jury to decide the issue in either party's favor.[18] The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[19] The nonmovant must then bring forth specific facts showing a genuine issue for trial.[20] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[21] The court views all evidence and reasonable inferences in the light most favorable to the non-moving party.[22]

### III.    Analysis

The Court evaluates Plaintiff's Title VII discrimination claim on remand under the three-part, burden-shifting framework of *McDonnell Douglas*. First, Plaintiff bears the initial burden to establish a prima facie case of discrimination.[23] Second, if Plaintiff successfully makes a prima facie case, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for its conduct.[24] Third, if Defendant does so, the burden shifts back to Plaintiff to show that Defendant's justification is merely a pretext designed to mask discrimination.[25] Because the

---

[18] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006) (citing *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1224 (10th Cir. 2001)).

[19] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[20] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (citation omitted).

[21] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998)).

[22] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (citation omitted).

[23] *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1141 (10th Cir. 2011) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802–04).

[24] *Id.*

[25] *Id.*

Court's prior analysis ended at the third part of the *McDonnell Douglas* framework, the Court proceeds directly to whether Plaintiff successfully demonstrates pretext on remand.

A plaintiff may show pretext by identifying "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in a defendant's proffered reasons for termination such "that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons."[26] In assessing an employer's reason, the court must assess the facts from the employer's perspective—not the aggrieved employee's.[27] Accordingly, "[t]he relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs."[28]

Plaintiff's arguments for pretext on remand largely lie outside of the seven sentences in Ms. Toomey's affidavit that the Tenth Circuit instructed the Court to consider. Instead, Plaintiff raises new arguments not raised in her response to Defendant's first summary judgment motion. Nonetheless, one way a plaintiff can demonstrate pretext "is to show that the employer treated similarly situated employees more favorably."[29] Plaintiff's primary argument for pretext on

---

[26] *Lobato v. N.M. Env't Dept.*, 733 F.3d 1283, 1289 (10th Cir. 2013) (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)).

[27] *Id.* (citing *Luster v. Vilsack*, 667 F.3d 1089, 1093 (10th Cir. 2011)).

[28] *Id.* (citing *Luster*, 667 F.3d at 1094).

[29] *Luster*, 667 F.3d at 1095.

remand falls into this category.[30] Specifically, Plaintiff argues Ms. Toomey's affidavit shows that Plaintiff did not get the same number of evaluations as similarly situated, white administrators at USD 475 in the 2020–2021 school year.[31]

Plaintiff's argument compares apples to oranges. True, Plaintiff did not receive an evaluation during the 2020–2021 school year, but that is when she was serving as an *interim* principal. There is no evidence that any other interim administrator—regardless of their race— received an evaluation during the 2020–2021 school year. Conversely, the white administrators Ms. Toomey's affidavit identifies as receiving an evaluation during the 2020–2021 school year were not in interim positions. Put simply, Plaintiff and these administrators were not similarly situated, and difference in treatment based on interim status does not constitute discrimination under Title VII.[32] Indeed, once Plaintiff became similarly situated when she was hired as the JCHS principal for 2021–2022 school year, she received one evaluation, just as all the other principals within the district had. The fact that Plaintiff did not receive an evaluation in the 2020–2021 does not establish pretext.

---

[30] Plaintiff begins arguing pretext by citing Kansas law requiring "that every employee in the first two consecutive school years of employment shall be evaluated at least one time per semester by not later than the 60th school day of the semester." K.S.A. 72-2409(d). It is uncontroverted that Plaintiff received only one evaluation during her employment at USD 475. But "[t]he evaluations' failure to conform with Kansas law is not evidence of discrimination" because "all principals were treated equally in this regard." *Tartt*, 2024 WL 3362340, at *5. Similarly, to the extent Defendant's noncompliance with Kansas law underlies Plaintiff's argument for pretext, it is also not evidence of pretext.

[31] Plaintiff cites a portion of paragraph 11 for support, where Ms. Toomey states "Alicia Schofield definitely got one. She was in her 2nd year as principal of Ware and is now the Director of Student Support Services. Veronica Wait got one as Vice Principal at Seitz. So did Jodi Testa. Kim Dressman got one. Melanie Laster would have had one prior to her retirement." Doc. 46-6 at 4.

[32] "Not every difference in treatment, of course, will establish a discriminatory intent. Title VII does *not* make unexplained differences in treatment per se illegal nor does it make inconsistent or irrational employment practices illegal. It prohibits only intentional discrimination *based upon* an employee's protected class characteristics." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1232 (10th Cir. 2000) (emphases in original) (internal quotation omitted).

Turning to Plaintiff's other arguments, Plaintiff next suggests that the evaluation she did receive in 2021–2022 is a pretext in and of itself. Specifically, Plaintiff contends that the evaluation is "phony" and "back-dated," and occurred only after the school board advertised for a new principal. For support that the evaluation involves racial animus, Plaintiff cites portions of Ms. Toomey's affidavit that remain inadmissible, even after the Tenth Circuit's ruling.[33] Plaintiff also cites her own response to her evaluation that she was targeted "by a specific Board member," but her response does not specify which Board member targeted her or suggest she was targeted because of her race.[34] Plaintiff's contention that the evaluation itself establishes pretext lacks evidentiary support.

Plaintiff's argument based on the evaluation continues into her argument that the Board's proffered reasons for termination are pretextual because each individual Board member's decision was not based on the exact same reasoning. Specifically, Plaintiff compares deposition testimony by Board members Haden and Johnson. Haden testified that the Board did not rely on Plaintiff's evaluation when voting to not renew her contract, whereas Johnson testified that 51 percent of the Board decisions for nonrenewal are based on evaluations generally, but could not recall specifics as to Plaintiff. Arguing for pretext based on this testimony, Plaintiff quips "[t]his is classic gang that couldn't shoot straight stuff."

Plaintiff is the one who misses the mark. For one, Haden and Johnson do not blatantly contradict one another as Plaintiff suggests. It is possible that Plaintiff simply did not fall into the 51 percent of Board decisions for nonrenewal based on evaluations that Johnson testified about,

---

[33] *Tartt*, 2025 WL 1779732, at *7 n.14 (finding no abuse of discretion in the Court's striking of paragraphs 13 and 17 of Ms. Toomey's affidavit for lack of personal knowledge).

[34] *See* Doc. 72-3.

-9-

which is consistent with Haden's testimony. Indeed, the record supports this outcome, as the seven Board members testified to various other reasons for deciding not to renew Plaintiff's contract, such as her failure to establish positive relationships, her creation of a negative workplace atmosphere, and her abusive supervision techniques. Even if a Board member relied on Plaintiff's evaluation, Plaintiff does not provide any evidence that the evaluation itself involved racial animus against her, as explained above, or that relying on it transforms a non-discriminatory reason into a discriminatory one. Frankly, it would be more concerning to this Court if seven individuals had the same, carbon-copy story underlying their decision, as Plaintiff suggests they should. Plaintiff's attempt to establish pretext in this way lacks merit.

Finally, Plaintiff attempts to establish pretext in the Board's decision through the November 2021 text exchange between Gustafson and Pinaire,[35] where Pinaire responded "racist" to a text about four board members, and Gustafson's comment to Plaintiff calling Johnson a racist.[36] To meet her pretextual burden through such circumstantial evidence, Plaintiff "must show some nexus between the circumstantial evidence and [the] decision to terminate."[37]

Here, Plaintiff does not show a nexus between the cited circumstantial evidence and the Board's unanimous decision to terminate her. There is no evidence that Gustafson or Pinaire were involved in the decision to terminate Plaintiff. Their comments that certain Board members were racist are akin to rumor and gossip, which is insufficient to establish a genuine issue of material

---

[35] The text exchange between Gustafson and Ms. Pinaire prompted the Tenth Circuit's instruction to the Court to "consider specific allegations of racism by Board members other than Johnson, if any are made" on remand. *See Tartt*, 2025 WL 1779732, at *8 n.17. Plaintiff does not identify any specific allegations of racism by other Board members for the Court to consider, and the Court finds none in the record.

[36] Plaintiff also cites Ms. Toomey's statement that racial animus was involved in the decision to terminate Plaintiff as circumstantial evidence of pretext, despite its inadmissibility. *See id.* at *7 n.14. Thus, the Court does not consider it here.

[37] *English v. Colo. Dep't of Corr.*, 248 F.3d 1002, 1010 (10th Cir. 2001).

fact regarding pretext.[38] Assuming *arguendo* that all four board members referenced in Plaintiff's circumstantial evidence were, in fact, racist, this "general bias" alone does not evince "specific discrimination" in the Board's decision against Plaintiff.[39] Plaintiff's proffered circumstantial evidence falls short of her burden to establish pretext.

Ultimately, Plaintiff fails to meet her pretextual burden to show that race was a criterion or a motivating factor in the Board's decision to not renew her contract. Plaintiff's contention that her termination "never has made sense" may demonstrate the Board's decision was not "wise, fair, or correct," but it does not establish the "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" that *McDonnell Douglas* requires to undercut the decision. Further, the seven sentences the Tenth Circuit remanded this case on do not establish pretext in the Board's decision, nor does Plaintiff make any direct argument for pretext based on these sentences. Accordingly, Defendant remains entitled to summary judgment.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment on Remand (Doc. 71) is **GRANTED**.

---

[38] *See Smith v. Potter*, 252 F. App'x 224, 228 (10th Cir. 2007) ("This brief, general reference to a rumor is insufficient to withstand summary judgment.") (citing *Harrison v. Wahatoyas, L.L.C.*, 253 F.3d 552, 558 (10th Cir. 2001) ("To withstand summary judgment, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." (quotations omitted))).

[39] *See Sasser v. Salt Lake City Corp.*, 772 F. App'x 651, 662 (10th Cir. 2004) ("[Plaintiff]'s attempt to extrapolate from evidence of general bias to specific discrimination rests on speculation alone.") (citing *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004)).

**IT IS SO ORDERED.**

This case is closed.

Dated this 12th day of February, 2026.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE